BRIGGS and MORRIS Administrators of TIMOTHY LOVELL

*vs.*

FISH et al.

A mortgage deed is nothing more than a pledge of real estate, as security for the payment of a debt. It is an accident of the debt, and liable, at all times, before the equity of redemption is foreclosed, to be defeated by the payment of the debt.

THIS was an action of ejectment for lands in Rockingham. On trial upon the general issue, the plaintiffs gave in evidence a mortgage deed executed by the said Fish to the said Lovell of the lands described in their declaration, dated March 1, 1806, conditioned for the payment of a note of hand of even date, by said Fish to said Lovell, for $1000, payable on or before the 1st day of March, 1816, with interest annually. The defendants admitted they were in the possession of the premises.

Here the plaintiffs rested their case, whereupon it was objected by the counsel for the defendants, and decided by the Court, that inasmuch as the plaintiffs had not produced the note described in the condition of said deed, or otherwise accounted for the same, the plaintiffs were not entitled to recover.

The said note being in the hands of the defendants' counsel in Court, was, at the request of the plaintiffs, produced, and given in evidence by them; upon which the interest was regularly indorsed as paid, to the 1st March, 1809. Then followed this assignment:—" April 17, 1813. Value received, in the sum of six hundred and fifty dollars. I order the contents of the within note to be paid to Jonas Fish.

(Signed)           ELIJAH LOVELL, Jr."

The plaintiffs then gave in evidence the deposition of Samuel Hubbard, who testified that in 1812, Timothy Lovell first delivered this note to Elijah Lovell, Jr. as an attorney, to collect the interest then due, and took Elijah's receipt for the same. That some months afterwards, Elijah returned the note to Timothy, saying he could not collect any thing upon it, and took up his own receipt. That at the same time (as the witness believed) in consequence of representations made by Elijah, Timothy requested him again to take this note, and do the best he could with it. On his cross ex-

amination his answer was, that Timothy told him (Elijah) to get it, or do the best he could with it; or words to that effect.

He also testified that another man was present, whom he did not know, but has since understood that his name was Wright.

The deposition of Wright, made in August, 1819, was then introduced by the defendants. This witness testified, that six or seven years ago he was at Timothy Lovell's with Elijah Lovell, Jr. That Timothy delivered a note to Elijah, Jr. which he called the Fish note, and told him to take it and do the best he could with it.

Hugh Henry was also introduced as a witness, who testified, that Elijah Lovell, Jr. offered to sell the note to him, which he declined purchasing. That John Fish was insolvent, and that the property was not worth more than five or six hundred dollars. That Jonas Fish advised with him about purchasing the note, which he advised him not to do; but that Jonas said, if he purchased he could make an arrangement with John, and get the property.

The defendants also gave in evidence a quit-claim deed of the premises from John to Jonas Fish, dated January 11, 1814.

The Court decided that by the law arising upon these facts, the plaintiffs were not entitled to recover; and directed that a nonsuit be entered, with liberty for the plaintiffs to move the Court to set aside the nonsuit, and for a new trial.

To which opinion of the Court, the plaintiffs excepted, and now at this term move the Court accordingly.

AIKENS J. delivered the opinion of the Court.

The mortgage upon which the plaintiffs seek to recover, is nothing else than a pledge of the real estate, as security for the payment of the note. It is an accident of the debt, and liable at all times, before the equity of redemption is foreclosed, to be defeated by the payment of it.

The note secured by that mortgage was, on the 17th of April, 1813, transferred to Jonas Fish, one of the defendants, for the consideration of $650, by Elijah Lovell, Jr.—the maker of the note being at that time insolvent, and the mortgaged premises not worth more than 5 or $600. If this transfer had been made by Timothy Lovell himself, under those circumstances, there could be no doubt, but that his lien upon the land by virtue of the mortgage

13

*Windham,*
May,
1824.

Briggs and
Morris
*vs.*
Fish et al. would have followed the debt; for whatever will pass the one will carry the other along with it.   The only question, therefore, is, whether Elijah Lovell, Jr. had power and authority from Timothy Lovell to transfer the note in the manner, and for the consideration, which he did.

If such authority was given, it must be the legal inference from the facts in testimony.   It is true that the language of Timothy Lovell at the time of the second delivery of this note, was very indefinite, and was such, as if addressed to an attorney, on the ordinary delivery of a note for collection, it would not confer the authority in question.   But was this such a delivery?   We are of opinion that it was not.   But that the language was made use of in view of a sale, and not of a collection.   Elijah, the attorney had *had* this note in his hands several months, for the purpose of collecting the interest then due.   He, on this very occasion, had returned it to Timothy, uncollected, with the declaration, " that he could not collect anything upon it," and had taken up his receipt.   But, as the witness says, in consequence of some representations made by Elijah, Timothy again delivered him the note with the instructions before mentioned.   It is to be supposed that after returning the note with the representation that he could collect nothing, he immediately made a second representation falsifying his first?   It is not to be believed.

But the note was not delivered a second time without an object. That object could not have been the collection of interest; for that was declared on the spot to be impracticable.   It could not have been to collect the principal; for it was not due. It could not have been to commence a suit upon the mortgage; for the mortgage was not delivered.   It must have been then for the purpose of effecting a sale, in the doing which, his instructions were to do the best he could with it.   And nothing appears but what he was faithful to those instructions; but on the contrary it does appear, that he sold the note to one of the defendants now in possession for more than it was worth, including the mortgage security.

This conclusion is strengthened by the facts, that soon after the second delivery, Elijah Lovell, Jr. openly and publicly offered the demand for sale, not to the purchaser alone, but to the witness, Henry.   That the purchaser took time to advise on the subject.

That Timothy Lovell lived in the vicinity, and must be presumed *Windham,* May, 1824. to have been cognizant of the facts.   We think, therefore, that the conclusion is fair and irresistible, that the note was delivered Rriggs and for the purpose of a sale on the best terms that could be procur- Morris *vs.* ed ; and that it would be  monstrous injustice, now to ¦ ay, that Fish et al. the agent had exceeded the broadest instructions possible, in doing the only act, in view of which, those instructions could have been rationally given.

Judgment that the plaintiffs take nothing by their motion.